IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 02-00125-03-CG |
| ) | |
| KENJI CRUTCHFIELD, ) | |
| ) | |
| Defendant-Petitioner. ) | |

**ORDER**

This cause is before the court on the motion of petitioner, Kenji Crutchfield, under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 53), memorandum in support (Doc. 54), the United States' response (Doc. 57), and petitioner's reply. (Doc. 58). Upon consideration of all matters presented, and for the reasons stated herein, the petitioner's 28 U.S.C. § 2255 motion is due to be **DENIED**.

**A.    BACKGROUND**[1]

On August 29, 2002, the petitioner entered a guilty plea pursuant to a written plea agreement. Petitioner pled guilty to Count Four which charged possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). Subsequent to his sentencing hearing in December 2002, the petitioner was sentenced to 135 months imprisonment, four years supervised release and a $100 special assessment. Although the petitioner filed a direct appeal, the Eleventh Circuit Court of Appeals affirmed his sentence on

---

[1] The facts stated herein are not in dispute and are derived from petitioner's memorandum in support of his 28 U.S.C. § 2255 petition (Doc. 54) and respondent's answer. (Doc. 57).

1

July 8, 2003. In timely fashion, the petitioner filed this § 2255 motion on September 27, 2004.

The evidence established that prior to June 6, 2002, Love Miller, Artavious Lang, and the petitioner, Kenji Crutchfield, traveled from Los Angeles, California, to Mobile, Alabama. Lang rode in a Chevrolet Blazer which had been rented in California in Miller's name by Miller and Crutchfield. Crutchfield rode by himself to Mobile in a Cadillac which belonged to his uncle. Lang and Crutchfield were transporting cocaine and marijuana from California to Mobile.

On June 5, 2002, after they had arrived in Mobile, Crutchfield rode with Miller to the home of Ms. Eva Jones. Crutchfield stayed in the car while Miller went into the house. Later that day, Miller and Lang drove the Blazer to a gas station to meet Crutchfield prior to leaving town. At the gas station, Crutchfield and Ms. Tamika Cleveland were in the Cadillac, while Miller and Lang were in the Blazer. Both vehicles were at the gas pumps when a red pickup truck pulled in and a black male, believed to be Eva Jones' brother, began firing at the two vehicles. When Miller attempted to drive away in the Blazer, the Blazer overturned. The shooter exited his truck, walked to the Blazer, and fired several shots into the roof. Miller fled the area on foot.

When the police arrived, a drug dog alerted them to the Blazer. Drugs were found in a suitcase belonging to Lang and in a bag belonging to Crutchfield. Lang's suitcase contained seven ounces of powder cocaine and approximately one ounce of crack cocaine. Crutchfield's bag contained two kilograms of power cocaine and eighteen pounds of marijuana. A 9-millimeter pistol was found in a trash can near the Cadillac, and a .40 caliber semi-automatic pistol was found in Ms. Cleveland's bag.

At sentencing, Officer Travis Danley testified that he interviewed Crutchfield on the day

of the offense, and Crutchfield stated that the cocaine belonged to Lang and himself, but the marijuana belonged to Miller. Based upon the evidence presented at the sentencing, the court found that the petitioner was responsible for all the drugs found in the vehicle. The court also found that possession of the gun in connection with those drugs was attributable to the petitioner based on the nature of the business he was in and the knowledge that one of the co-conspirators had used the gun the previous day to collect a drug deal.

**B.   HABEAS STANDARD**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v.Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).[2]

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. United States, 152 F.3d 1329, 1331 (11th Cir.1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990).  Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  Harris v. United States, 149 F.3d 1304, 1306 (11th Cir. 1998).

**C.     ANALYSIS**

Petitioner advances two types of claims in his motion to vacate or set aside his conviction and sentence.  (Doc. 53).  First, petitioner submits that he received ineffective assistance of counsel because his attorney failed: (1) to object to the calculation of relevant conduct (Doc. 54 at 7); and (2) to prevent application of an enhancement for a co-defendant's possession of a firearm.  (Id. at 14).  Next, petitioner contends that the court violated petitioner's constitutional rights when it based petitioner's sentence on facts not charged in the indictment or admitted by petitioner in his guilty plea.  (Id. at 12).  The court addresses petitioner's arguments in turn.

**1.     Ineffective Assistance Claims**

The Supreme Court has restricted collateral attack for § 2255 claims that do not allege constitutional or jurisdictional errors to those only where the alleged error presents "a fundamental defect which inherently results in a complete miscarriage of justice" or "an

4

omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). Although Sentencing Guideline errors are not ordinarily cognizable on collateral review, such claims may be reviewed where, as in this case, a petitioner has couched them as ineffective assistance of counsel claims. See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002)(although a Sentencing Guideline error "is not automatically a basis for relief under 28 U.S.C. § 2255, . . . if the claim is repackaged as one of ineffective assistance of counsel, . . . it becomes a constitutional claim."). These claims must be examined under the standard established in Strickland v. Washington, 466 U.S. 668, (1984).

In order to establish ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient, and that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, it is well settled that mere "[c]onclusory allegations of ineffective assistance are insufficient" to meet petitioner's burden in this regard. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).

In Strickland, the United States Supreme Court articulated the elements to be considered when analyzing an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. Thus, a successful habeas petitioner must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," (the performance prong) id. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different" (the prejudice prong).  Id. at 694.

Under the performance prong of Strickland, the petitioner must establish that his counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. 466 U.S. at 687-89.  The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense.  Id.  In order to establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the error had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."  Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting Strickland, 466 U.S. at 693).

To prove ineffective assistance, Strickland requires a habeas petitioner to satisfy both prongs of the Strickland test.  See Butcher v. U.S., 368 F.3d 1290 (11th Cir. 2004). Consequently, the court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."  466 U.S. at 697; Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.").

This is a heavy burden for a petitioner, and the Eleventh Circuit has opined that successful ineffective assistance of counsel claims will be a rarity.  See Rogers v. Zant, 13 F.3d

384, 386 (11th Cir. 1994) ("the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."); see also Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("It is important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls."). An attorney's performance is strongly presumed to have been reasonable, and should not be judged ineffective by hindsight. See Caraway v. Beto, 421 F.2d 636, 637 (5th Cir. 1970); see also MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960)). The appropriate methodology for determining whether there has been ineffective assistance of counsel is to examine the "totality of the circumstances" in the record. House v. Balkcom, 725 F.2d 608, 615 (11th Cir. 1984), cert. denied, 469 U.S. 870 (1984).

Petitioner first claims that his counsel was ineffective because he failed to object to the determination of the quantity of drugs attributable to him based upon relevant conduct. (Doc. 54 at 7). As reflected in the record, counsel did object to the calculation of relevant conduct, at the very least, on direct appeal. (Doc. 51). In his direct appeal, petitioner argued that the district court erred in holding him accountable for 56.7 grams of crack cocaine because he could not have "foreseen" that quantity. (Id. at 5). In addition, petitioner contended that even if the district court properly attributed some amount of crack to him, no evidence existed to support a quantity of 56.7 grams of crack. (Id. at 5-6). Finally, petitioner claimed that there was no evidence that he knew about a drug transaction between two co-conspirators which resulted in additional attribution of drugs. (Id. at 6). It follows that counsel did not act unreasonably; however, even if he did, the petitioner cannot establish prejudice, as the Eleventh Circuit

determined that the district court correctly applied the Guidelines to the calculation of petitioner's sentence.  (Id. at 6-7).

The petitioner also claims to have received ineffective assistance of counsel due to his counsel's failure to prevent application of a two-point enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for a co-defendant's possession of a firearm.  (Doc. 54 at 14).  Contrary to petitioner's suggestion, counsel did file a legal objection to application of the gun enhancement at sentencing.  (Sentencing Tr.).  Petitioner did not raise the district court's rejection of petitioner's argument on direct appeal, and petitioner has not demonstrated cause for procedural default or any resulting prejudice.  See Greene v. U.S., 880 F.2d 1299, 1305 (11th Cir. 1989)(A defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a collateral proceeding); United States v. Frady, 456 U.S. 152 (1982)(Claims not raised previously, although previously available, are barred by procedural default absent a showing of cause and actual prejudice.).  Furthermore, the court notes that when drafting a direct appeal, appellate counsel has discretion to choose the most promising arguments; the attorney "is not obliged to crowd a brief with less promising ones which may detract in order to provide effective assistance."  Cofske, 290 F.3d 437 (citations omitted).  Petitioner has failed to demonstrate how counsel may have acted unreasonably; thus, his claim is due to be denied.

    **2.**	**Blakely Claim**

Finally, petitioner raises a claim based upon Blakely v. Washington, 542 U.S. 296 (2004). Because the Supreme Court has not made its decision in Blakely retroactive to cases on collateral attack, petitioner's claim is without merit. See In re Dean, 375 F.3d 1287, 1290 (11th

Cir. 2004).

## **CONCLUSION**

After due consideration of all matters presented, petitioner's motion to vacate, set aside, or correct sentence is **DENIED**.

**DONE and ORDERED** this 6th day of July, 2007.

> /s/ Callie V. S. Granade
> CHIEF UNITED STATES DISTRICT JUDGE